**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | Case No. 1:22-cv-01441 JLT CDB |
| Plaintiff, | ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT |
| v. | (Docs. 31, 32) |
| S.C. ANDERSON, INC., et al., | |
| Defendants. | |

In this insurance coverage dispute, plaintiff Travelers Property Casualty Company of America argues its policy did not cover a $673,000 settlement payment that it made on behalf of defendant S.C. Anderson, Inc., its insured, to settle a third party's claims. Travelers seeks a judicial declaration that the underlying claims were not covered and that it is entitled to reimbursement. The matter is before this Court on the parties' cross-motions for summary judgment. Although it appears that California courts have not had an opportunity to decide whether an insurer in Travelers' particular position may dispute coverage and seek a reimbursement, it is likely the California Supreme Court would allow it to do so, but only if a factfinder resolved a crucial factual dispute in Travelers' favor. The court therefore **DENIES** both pending motions.

/////

1

**BACKGROUND**

Almost all of the relevant facts are undisputed.  Several years ago, a disagreement arose between S.C. Anderson and the owners of a property in Bakersfield, California, where S.C. Anderson had been engaged as a general contractor.  (Doc. 31-1 ¶¶ 1–2.)  The property owners ultimately filed a lawsuit against S.C. Anderson and several subcontractors in state court in 2017.  (*Id.* ¶ 4.)  The lawsuit included claims for construction defects, fraud, misrepresentation, and overbilling, and the property owners sought an award of the costs that would be necessary to complete the project as planned.  (Doc. 32-2 ¶ 5.)

Even before the lawsuit was filed, S.C. Anderson gave notice of the underlying claims to Travelers, which had issued S.C. Anderson an excess general liability policy.  (*Id.* ¶¶ 1–2.) Travelers responded in December 2016 with a "reservation of rights letter."  (*Id.* at 4.)  Based on the information then available to Travelers, it believed S.C. Anderson had sufficient coverage under its primary insurance policy with Old Republic.  (Doc. 31-1 at 7.)  This meant in Travelers' view that its excess policy did not provide coverage—its policy had not been "triggered," so to speak—and did not impose any obligation on Travelers to defend or indemnify S.C. Anderson. (*Id.* at 4–5.)  The letter nevertheless continued, citing and quoting several policy provisions that in Travelers' view were "relevant" to S.C. Anderson's case.  (*Id.* at 5.)  Among them were the basic grant of coverage, which states that the policy provides coverage for "Bodily Injury" or "Property Damage" caused by an "Occurrence," and a related exclusion focused on S.C. Anderson's own work and products.  (*Id.* at 5, 7.)

Travelers then wrote that if a court ultimately rejected "any of the grounds for declining coverage" that it had just cited, and if the court did so "in a final judicial order that is subject to no further appeal," then Travelers would provide coverage, but "only in accordance with and to the extent of the theory of coverage adopted by such court."  (*Id.* at 8.)  Travelers also warned that if it did make a payment to S.C. Anderson, and if any portion of that payment was "not in accordance with" the court's theory of coverage, then it would seek reimbursement of that portion of the payment.  (*Id.*)

Several years later, in the Summer of 2022, the parties in the underlying state court

lawsuit attended a mandatory pretrial settlement conference.  (Doc. 32-2 ¶ 8.)  The case did not settle on the first day of their settlement conference.  (*Id.* ¶ 9.)  It was scheduled to resume the next Monday.  (*Id.*)  Before then, an attorney representing S.C. Anderson sent a status report to Travelers. (*See id.* ¶ 10.)  He stated that S.C. Anderson "would prefer the excess carrier," i.e., Travelers, "not become involved."  (*Id.*)  That changed a few days later, however, when on the Saturday afternoon before the settlement conference was set to resume, a different attorney representing S.C. Anderson wrote a letter to Travelers and said the company now believed a settlement "should be facilitated by Travelers."  (*Id.* ¶ 11; *see also* Doc. 32-4 at 97–98.)  In other words, S.C. Anderson now wanted Travelers to be involved and to help fund the settlement agreement.  (*See* Docs. 32-2 ¶¶ 11–13; 32-4 at 97–98.)

Travelers responded in the late morning of the next business day, i.e., on Monday, while the continued settlement conference was in progress.  (*Id.* ¶ 13; *see also id.* at 10–11 (attaching letter).)  It confirmed in a one-page letter that it intended "to comply with the terms of its policies and governing law," and it "reserved its right to seek reimbursement of any settlement paid on S.C. Anderson's behalf" if any of the claims were not in fact covered, citing *Blue Ridge Insurance Company v. Jacobson*, 25 Cal. 4th 489 (2001).  (*Id.*)

The parties disagree when S.C. Anderson received this letter.  One of S.C. Anderson's attorneys and its Chief Operating Officer would testify at trial that they did not receive Travelers' letter or understand that it had purported to reserve any rights until after the underlying case settled.  (*See* Docs. 36-3, 36-4.)  Travelers would offer testimony by a claims professional who attended the settlement conference, and he recalls specifically alerting S.C. Anderson's attorney, in person, that Travelers had sent a letter reserving its rights.  (Doc. 37-3.)

There is no dispute, however, that S.C. Anderson reached a settlement agreement with the other parties in the state court case later that day.  (Doc. 32-2 ¶ 14–15.)  S.C. Anderson's share of the settlement payment was $2,673,000.  (*Id.* ¶ 15.)  Its primary insurer paid its $2 million limit, and a few weeks later, Travelers paid the remaining $673,000.  (*Id.* ¶ 16.)  Travelers then filed its complaint in this case.  (Doc. 1.)  It argues the claims against S.C. Anderson in the underlying state court litigation were not covered under its excess policy, primarily because those claims did

not allege "Property Damage" caused by an "Occurrence." (*See id.* ¶¶ 15–19.)  It seeks reimbursement of the $673,000 it contributed.  (*See id.* ¶¶ 20–22.)  As noted in the introduction above, the matter is before the Court on the parties' cross-motions for summary judgment, which are fully briefed and were submitted without a hearing.  (*See* Docs. 31, 32, 36–39.)

## STANDARD OF DECISION

Federal Rule of Civil Procedure 56 gives district courts authority to grant summary judgment to a party who shows both "that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The court views the record in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Cross-motions for summary judgment are evaluated separately under the same standard, "giving the nonmoving party in each instance the benefit of all reasonable inferences." *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

## DISCUSSION

The parties disagree whether Travelers can seek reimbursement at all, regardless of whether the underlying claims against S.C. Anderson were covered.  The Court begins with that question, applying California law. *See AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 847 (9th Cir. 2020).

A more detailed description of the parties' positions is necessary as a starting point.  In S.C. Anderson's telling, Travelers cannot pursue reimbursement in this case for the simple reason that it did not adequately reserve its right to do so.  (*See* Doc. 31 at 4.)  It dismisses Travelers' original letter, the one it sent in 2016, as lacking "any reservation of rights to enter a settlement or pay a judgment on S.C. Anderson's behalf for non-covered claims and thereafter seek

4

reimbursement." (*Id.*)  It dismisses Travelers' 2022 letter, the one in which it cited the California Supreme Court's decision in *Blue Ridge*, because that letter did not satisfy the prerequisites the court established in that case.  (*See id.* at 4–7.)  But more fundamentally, S.C. Anderson believes *Blue Ridge* is not controlling in excess insurance coverage disputes, such as this one.  (*Id.* at 7.)  It has found "no case law directly addressing the question of equitable reimbursement in the excess insurer context." (*Id.*)  S.C. Anderson thus maintains that "broader principles" of California law show Travelers' attempts to reserve its rights fell short on a fundamental level.  (*See id.* at 7–10.)

Travelers does not dispute that it could only pursue its claims in this case if it adequately reserved its rights to do so.  It argues that both of its letters adequately reserved those rights under *Blue Ridge* and the broader principles of California insurance law that undergirded the California Supreme Court's decision in that case.  (*See* Docs. 32 at 20–22; 37 at 8–19.)  But Travelers also appears to agree with S.C. Anderson that no court, state or federal, has decided exactly what California law demands of an excess insurer who wishes to avoid waiving its right to seek reimbursement in similar circumstances.  (*See, e.g.*, Doc. 37 at 12–19.)  And although Travelers originally relied on *Blue Ridge* to explain what rights it was reserving, it argues now that it would "make no sense whatsoever" to hew strictly to what the California Supreme Court required of the insurer in that case.  (*Id.* at 13–14.)

The parties thus share three premises, despite their broader dispute: (1) Travelers can maintain this case only if it adequately reserved its rights, and (2) the state supreme court's opinion in *Blue Ridge* is not controlling in a strict sense, but (3) the opinion illustrates the more fundamental state law principles for deciding whether Travelers can pursue its claims in this case.

The most fundamental of these principles is that an insurance policy is a contract between insurer and insured.  *See Blue Ridge*, 25 Cal. 4th at 497.  The insurer promises to pay up to some specified sum if specific losses occur, and the insured promises to pay premiums in exchange. *See id.*  The insurer has a duty to indemnify the insured for claims the policy covers.  *See id.* at 502–03.  It has "no duty to pay for noncovered claims." *Id.* at 503.  "[T]he insured did not pay premiums for such coverage." *Id.* at 503.  If for some reason an insurer has paid for a claim the policy does not in fact cover, California courts have said that the insurer has an "implied" and

"quasi-contractual" right of reimbursement. *Buss v. Superior Court*, 16 Cal. 4th 35, 51 (1997). By the same token, an insured who has received payments for claims that were not covered has, in a sense, been unjustly enriched. *Id.* As the California Supreme Court put it in *Buss v. Superior Court*, if one person owes another $50 but has only a $100 bill, he may "have a prophylactic duty" hand over the $100 bill, but he also has a right, "implied in law if not in fact, to get back $50." *Id.* An insured cannot similarly expect to keep the "windfall" he was not entitled to receive if his insurer overpaid him. *Id.*

Insurers have found themselves "overpaying" in two relatively common scenarios. In the first, a third party makes claims against the insured and files a lawsuit. Some of the third party's claims might be covered, perhaps only potentially, but others are not, not even potentially. *Id.* at 49–50. The California Supreme Court has held that the insurer must defend its insured "immediately" and "entirely" in this situation. *Id.* at 48–49. So, by the time the case is over, the insured will have paid for the defense against both the potentially covered claims and the claims that were not even potentially covered, even though it had no obligation to defend its insured against claims that were not even potentially covered. *See id.* at 50.

In the second scenario, an insurer has similarly taken up the defense of its insured against a third party's potentially covered claims, even though it believes the policy probably does not cover those claims, as the law obligated it to do. *See Blue Ridge*, 25 Cal. 4th at 498. The third party then offers to settle the case before trial in exchange for a sum that is both reasonable and within the policy's limits. *See id.* The insurer has no obligation to indemnify the insured against uncovered claims. But if the insurer rejects the settlement offer because it does not believe the policy provides coverage, then it assumes the risk that it will later be held liable for all resulting damages after a trial—even damages in excess of its policy limits—in the event that it was wrong, and the claims were in fact covered. *Id.* (citing *Johansen v. Cal. State Auto Ass'n Inter-Ins. Bureau*, 15 Cal. 3d 9 (1975)). But it might also have been correct in believing that there was no coverage. A court might also have agreed, if only the insurer had been able to pursue and obtain a declaratory judgment in time. *See id.* at 496–97. If so, then an insurer may find itself indemnifying its insured for claims that were not actually covered.

6

In both scenarios, insurers face something of a dilemma. *See Val's Painting & Drywall, Inc. v. Allstate Ins. Co.*, 53 Cal. App. 3d 576, 585 (1975). In the first, how do they defend their insured against the claims that are not even potentially covered without opening themselves to the argument that they have waived the non-coverage argument? *See id.*; *see also Stonewall Ins. Co. v. City of Palos Verdes Ests.*, 46 Cal. App. 4th 1810, 1838 (1996), *disapproved of in part on other grounds by Truck Ins. Exch. v. Kaiser Cement & Gypsum Corp.*, 16 Cal. 5th 67, 99 (2024). In the second, how does the insurer consider and pay for a reasonable settlement offer on behalf of its insured without losing its chance to argue and prove that the underlying claims were not covered? *See Johansen*, 15 Cal. 3d at 19; *see also Stonewall Ins. Co. v. Palos Verdes Estates*, 46 Cal. App. 4th 1810, 1838–39 (1996).

California courts have resolved the dilemma by permitting insurers to reserve their rights. As to the claims that were not even potentially covered in the first scenario, the insurer may seek reimbursement of its defense costs from the insured if it adequately reserves its right to do so. *See Buss*, 16 Cal. 4th at 50–51 & n.27; *Truck Ins. Exch. v. Superior Court*, 51 Cal. App. 4th 985, 994 (1996). In the second scenario, the insurer may seek reimbursement from the insured for any settled claims that were paid but not covered, again if the insurer adequately reserves it right to do so. *See Blue Ridge*, 25 Cal. 4th at 502. The insurer's reservation of rights gives insureds in both situations a chance to "take any steps that it may deem reasonable or necessary" in response to the insurer's coverage position. *Blue Ridge*, 25 Cal. 4th at 501 (quoting *Buss*, 16 Cal. 4th at 61 n.27). They can accept the insurer's support with the attendant risk that the insurer may later be entitled to a reimbursement. *See id.* (citing *Buss*, 16 Cal. 4th at 61 n.27). Or they can move forward with full control, without the insurer's support, but also without the risk of a future reimbursement. *See id.* (citing *Buss*, 16 Cal. 4th at 61 n.27). The reservation thus balances the insurer's and the insured's competing interests. *Id.* (citing *Buss*, 16 Cal. 4th at 61 n.27).

In *Blue Ridge*, the court concluded from these principles that there were three "prerequisites for seeking reimbursement for noncovered claims included in a reasonable settlement payment," i.e., in the second scenario described above. *Id.* at 502. First, the insurer must reserve its rights expressly and in a timely fashion. *Id.* Second, the insurer must expressly

notify the insured that it intends to accept a proposed settlement offer on the insured's behalf. *Id.* Third, the insurer must expressly "offer to the insureds that they may assume their own defense when the insurer and insureds disagree whether to accept the proposed settlement." *Id.* If the insurer does not satisfy these prerequisites, then the insured cannot truly be said to have made a choice or reached an agreement with the insurer about how to proceed. *See id.* at 499–501 (citing *Val's Painting*, 53 Cal. App. 3d at 580 and *Golden Eagle Ins. Co. v. Foremost Ins. Co.* 20 Cal. App. 4th 1372, 1392–93 (1993)).

The insurer satisfied these prerequisites in *Blue Ridge*. It had assumed the defense of its insureds in a third-party dog-attack claim under the terms of a homeowner's policy. *Id.* at 493. The insurer did not believe the claims were covered, however, among other reasons because its insureds had previously run a dog breeding business from their home, and the insurer believed the claims fell within the "business pursuits" or "professional services" exclusion. *See id.* at 493. It took up the defense under a reservation of rights, expressly warning that it might attempt later to seek reimbursement of any uncovered claims. *Id.* The third party eventually offered to settle the case for an amount within the policy limits, which the insurer also believed was reasonable, and it notified the homeowners that it intended to settle the case on their behalf. *See id.* at 493–94. The insured homeowners objected and contested their liability; they did not want to settle. *See id.* at 494–95. The insurer offered them the chance to step in and assume control of their own defense, but they declined, and the insurer accepted the settlement offer over the homeowners' objection. *See id.* at 495–96. It then obtained a declaratory judgment confirming that the claims were not covered, and the settlement was reasonable. *Id.* at 497. The California Supreme Court held that it was entitled to a reimbursement. *Id.* at 502.

The coverage dispute between Travelers and S.C. Anderson is quite different. It presents, in effect, a third scenario beyond the two discussed above, one that California courts appear not to have previously discussed or considered, including in *Blue Ridge*. At the start, the disputed policy is not a primary policy, but rather an "excess" policy, one in which the insurer agreed to pay certain sums after a specific limit had been reached. (*See* Doc. 31-1 at 5); *see also, e.g.*, *Olympic Ins. Co. v. Emps. Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 598 (1981) (explaining

8

the differences).  Next, in contrast with the insurer in *Blue Ridge*, Travelers refused to provide a defense, citing the retained limit, the basic coverage grant, and a few exclusions, reserving its rights if S.C. Anderson disagreed and successfully challenged that *denial* in court.  (*Id.* at 4–8.)  But S.C. Anderson did not voice any disagreement and did not challenge the denial.  It moved forward with the support of its primary insurer, believing that Travelers' participation was unnecessary, even undesirable, thus removing this case further from the sphere of the state court's reasoning in *Blue Ridge*.  (*See* Doc. 32-2 ¶ 10.)

In further contrast with the parties' actions in *Blue Ridge*, Travelers was not driving the third-party case toward a potential settlement.  No evidence in the record shows Travelers was involved until the very end, at least not as the parties have presented it.  And just before trial, during settlement negotiations, it was S.C. Anderson, not Travelers, who came to believe that it was reasonable—in fact better—to settle the third party's claims for more than the limits of its policy with the primary insurer.  (*Id.* ¶¶ 11–12.)

The final relevant difference between this case and *Blue Ridge* is the parties' agreement here to move forward with the proposed settlement.  No one suggested then or contends now that the agreement was unreasonable or unwanted.  Neither Travelers nor S.C. Anderson objected to the settlement or refused to participate or pay. (Doc. 31-1 at 11.)  In short, everyone seemed to agree that the settlement was a good deal then, and no one has expressed any doubts now.

Given these differences, it comes as no surprise to read in the parties' briefing that they believe *Blue Ridge* is not strictly controlling.  The Court agrees it is not.  The parties agree that California courts have not decided what would make a reservation of rights "adequate" in these circumstances, neither have they identified any relevant federal decisions.  The federal decisions they do cite are distinguishable for the same reasons as *Blue Ridge*.  *See, e.g.*, *Allstate Ins. Co. v. Baglioni*, 551 F. App'x 351 (9th Cir. 2014) (unpublished) (concluding that *Blueridge* is binding when it is applicable), *aff'g* No. 11-06704, 2012 WL 683075, at \*5 (C.D. Cal. Mar. 2, 2012) (applying *Blue Ridge* in a dispute between an insured and a primary insurer who provided a defense); *Northland Ins. Co. v. Guardsman Prods., Inc.*, 141 F.3d 612, 619–20 (6th Cir. 1998) (holding the insurer was a primary insurer, had a duty to defend, and was estopped from disputing

coverage because it did not do so until "some seven years after its knowledge of the potential claim.").

The Court's own searches have yielded no controlling or persuasive authority. One federal district court concluded in an excess insurance coverage dispute that *Blue Ridge* did not apply, but unlike Travelers, the excess insurer in that case did not learn of the underlying lawsuit until later, when judgment had already been entered. *See Westchester Fire Ins. Co. v. Zurich Am. Ins. Co.*, No. 14-2500, 2015 WL 12655618, at *4 (C.D. Cal. Feb. 5, 2015). The Texas Supreme Court has also considered the obligations of an excess insurer when the insured consents to a settlement but not to the insurer's asserted right to reimbursement. *See generally Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42 (Tex. 2008). But as both the California and Texas Supreme Courts have held, the two states' laws differ in what they allow or require insurers to do, and those differences foreclose useful comparisons in this context. *See id.* at 50–51; *Blue Ridge*, 25 Cal. 4th at 505.

When a state's courts have not addressed a particular issue, a federal court "must predict how the state's highest court would resolve" that issue. *Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*, 4 F.4th 747, 755 (9th Cir. 2021) (quoting *Gilbert v. 7-Eleven, Inc.*, 157 F.4th 1057, 1068 (9th Cir. 2025)). The California Supreme Court's opinions in *Blue Ridge* and *Johansen* show it would likely require an "agreement" of some kind, whether express or implied, between the excess insurer and its insured about how to resolve their coverage dispute. *See Blue Ridge*, 25 Cal. 4th at 498–99 (citing *Johansen*, 15 Cal. 3d at 12, 15–16, 19). More specifically, to avoid waiving its rights to contest coverage while contributing to an indemnification, the excess insurer would need to obtain its insured's agreement that it could later attempt to prove the disputed claims were not covered and seek reimbursement as a remedy. *See id.* at 501–02 (citing *Buss*, 16 Cal. 4th at 50–51, 61 n.27).

An excess insurer's unilateral but express reservation of its rights would likely suffice to create the necessary "agreement" under California law. *See id.* at 501–02 (citing *Buss*, 16 Cal. 4th at 61 n.27). But the state court would likely take measures to protect the insured's ability to make an informed and meaningful decision and to avoid any unfair prejudice. *See id.* at 499–501

(citing *Golden Eagle*, 20 Cal. App. 4th at 1390—93; *Md. Cas. Co. v. Imperial Contracting Co.*, 212 Cal. App. 3d 712, 714, 717, 721–22 (1989); *Val's Painting*, 53 Cal. 3d at 580–81, 587–89). It would certainly require the express reservation to be "timely" *Id.* at 502.  It would likely require the excess insurer to make expressly clear that if the insured accepted the excess insurer's participation in the proposed settlement, then the insured was also accepting the risk that the excess insurer could later contest coverage and obtain a reimbursement.  *Id.* at 501–02 (citing *Buss*, 16 Cal.4 t at 61 n.27).  But the state court would probably not require the excess insurer to make any particular statements about the insured's defense in its express reservation or rights, at least not when another entity is controlling the insured's defense, as is often the case.  *Cf. id.* at 502 (discussing the obligations of a primary insurer who is providing a defense).  And if the insured is already aware of the proposed settlement, it would make little sense for the state court to require the excess insurer to repeat back to its insured that a proposed settlement was in the works.  *Cf. id.* at 499 (citing *Val's Painting*, 53 Cal. pp. 3d at 588).

The California Supreme Court would likely permit Travelers to pursue its reimbursement claims in this case, but only if it ultimately demonstrates that S.C. Anderson received and considered the express reservation it sent.  Travelers' original reservation in 2016 is not relevant in this respect.  That reservation was of different rights—those that would become relevant in litigation stemming from the 2016 denial and which litigation never came to be.  The later reservation in 2022, by contrast, could have been adequate.  Several undisputed facts support that conclusion.  S.C. Anderson understood then that a settlement agreement was being negotiated.  It was updating Travelers about the settlement negotiations.  (Doc. 32-2 ¶ 10.)  S.C. Anderson also participated directly in the settlement conference, its personal counsel asked Travelers to contribute, and its personal counsel explained the benefits of a settlement beyond the retained limit.  (Doc. 32-2 ¶¶ 11–13.)  Nothing suggests there was any disagreement about whether the proposed settlement was reasonable; all appeared to agree that it was.  Travelers then expressly reserved its right to pursue reimbursement for non-covered claims.  (Doc. 31-1 at 11.)  Its express reservation made clear that its participation was conditioned on its ability to seek reimbursement of any money it paid on S.C. Anderson's behalf.  (*See id.* ("[P]lease be advised that Travelers

11

reserves its right to seek reimbursement of any settlement paid on S.C. Anderson's behalf for non-covered damages under *Blue Ridge* . . .").)  There is no danger that S.C. Anderson would be left to defend itself if it refused Travelers' proposed terms.  S.C. Anderson was represented. Travelers had already refused to provide a defense years before, and S.C. Anderson had not contested that refusal.  (*See* Doc. 31-1 at 4–8.)  In sum, these undisputed facts show the 2022 reservation of rights letter would give S.C. Anderson a meaningful chance to consider its options and make a choice, but only if S.C. Anderson actually received the letter with enough time to do so.

Travelers could rely on several portions of the undisputed record to prove at trial that its letter was timely.  It states without contradiction that years had passed after it denied coverage; that S.C. Anderson informed Travelers that its participation was unwanted even as settlement talks were underway; that Travelers learned for the first time on a Saturday afternoon that S.C. Anderson was instead demanding that Travelers contribute to the settlement agreement; and that Travelers sent its express reservation the next Monday morning.  (*See* Docs. 32-2 ¶¶ 8–14; 32-4 at 97–98.)  These undisputed facts distinguish this case from those S.C. Anderson cites in its briefing.  (*See* Doc. 31 at 8–10 (citing *Northland*, 141 F.3d 612; *Stonewall*, 46 Cal. App. 4th 1810; *Golden Eagle*, 20 Cal. App. 4th 1372).)

Other portions of the record could permit a reasonable factfinder to decide that S.C. Anderson did not have an adequate opportunity to review Travelers' letter and to consider its options.  As summarized above, an attorney who represented S.C. Anderson in the underlying construction defects litigation, asserts in a declaration that the company negotiated and accepted the settlement agreement "with the understanding that Travelers was contributing $673,000 to the settlement fund" unconditionally, i.e., without reserving any rights.  (Doc. 36-4 ¶ 6.)  S.C. Anderson's Secretary and Chief Operating Officer states similarly in a declaration that he was not aware that Travelers had reserved any rights until after the case settled, and he claims the company would not have accepted any money from Travelers if it had known that Travelers would later file a lawsuit like this one.  (Doc. 36-3 ¶¶ 5–9.)  Travelers argues these claims are false, citing the declaration of a claims professional who attended the settlement conference.

12

(Doc. 37-3.)  He recalls looking on as S.C. Anderson's attorney discussed Travelers' reservation of rights with one of his client's representatives.  (*Id.* ¶ 5.)

If Travelers ultimately proves that S.C. Anderson and its counsel received and reviewed its letter, then it would likely have proven that it adequately reserved its right to seek reimbursement in this action.  If S.C. Anderson proves the opposite, then it may succeed in proving that Travelers' reservation was inadequate.  With respect to Travelers' motion, the Court must resolve this dispute in favor of S.C. Anderson at this stage; with respect to S.C. Anderson's motion, the court must do the opposite.  *See Anderson*, 477 U.S. at 248; *Am. Civil Liberties Union*, 333 F.3d at 1097.  The court must therefore deny both parties' motions without reaching the coverage dispute.

## CONCLUSION

The pending cross-motions for summary judgment (Docs. 31 and 32) are **DENIED**.  The parties shall meet and confer and file, **WITHIN THIRTY DAYS**, a joint status report proposing a schedule for all further proceedings that will be necessary for a final resolution of this matter.

IT IS SO ORDERED.

Dated:    **March 6, 2026**

UNITED STATES DISTRICT JUDGE

13